UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LEMAR TYREE GREEN,<br><br>      Petitioner,<br><br>v.<br><br>TOM ROY, Commissioner of Corrections,<br><br>      Respondent. | Court File No.: 15-cv-107 (SRN/TNL)<br><br>**REPORT & RECOMMENDATION** |

> Lemar Tyree Green, #235265, GCADE, 454 West 6th Street, Red Wing, MN 55066, *pro se* Petitioner.
>
> Jean E. Burdorf & Linda M. Freyer, Hennepin County Attorney's Office, 300 South 6th Street, Minneapolis, MN 55487; and Matthew Frank and James B. Early, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, for Respondent.

This matter is before the Court, Magistrate Judge Tony N. Leung, on a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1). This action has been referred to the undersigned magistrate judge for report and recommendation to the Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Respondent Tom Roy, Commissioner of Corrections, moved to dismiss the petition on March 4, 2015. (ECF No. 8.) Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court will recommend that the Petition be denied and Respondent's Motion to Dismiss be granted.

## I. BACKGROUND

### A. Green's Trial and Direct Appeal

Petitioner was convicted of Criminal Sexual Conduct in the First Degree in violation of Minn. Stat. § 609.342, Subd. 1(b), and Criminal Sexual Conduct in the First Degree in violation of Minn. Stat. § 609.342, subd. 1(h)(iii). The following facts are set forth in the opinion of the Minnesota Court of Appeals:

> Appellant's biological daughter, K.B., alleged that appellant sexually abused her between March 2009 and October 17, 2009, when she was fifteen years old. K.B. alleged that appellant coerced her into having anal intercourse on more than five occasions and oral sex and vaginal intercourse on more than ten occasions. The abuse took place at her home in Crystal, Minnesota, where she lived with appellant, his girlfriend, and their two young sons.
>
> K.B. did not disclose these incidents until October 2009 when a friend questioned her about what appeared to be a bloodshot eye. K.B. told her friend that, because she was receiving poor grades, appellant hit her, knocked her to the ground, held her by her neck, and banged her head against the wall with his thumb in her eye. K.B. also told her friend that appellant sexually abused her, but indicated she did not want anyone else to know because she did not want to break up her "happy family."
>
> On October 28, 2009, when questioned by a peer mentor at school about her poor grades, truancy, and attitude towards teachers, K.B. informed her that appellant sexually abused her. The mentor then told the principal about K.B.'s allegations of sexual abuse, and the principal referred K.B. to the school counselor for consultation. After K.B. related details about the sexual abuse to the school counselor, the matter was referred to the Crystal Police Department.
>
> Later that same day, K.B. accompanied law enforcement agents to her residence to execute a warrant. At the residence, K.B. identified where the sexual abuse occurred and where

appellant ejaculated. Police retrieved various items for DNA analysis, including a comforter and pairs of K.B.'s underwear. DNA testing of most of the items did not directly support the state's case. A semen sample found on K.B.'s underwear was too small for DNA analysis. However, as to a sample found on the comforter that consisted of a mixture of semen and a non-sperm fraction of three or more people, the state's expert testified that appellant's girlfriend and 97.49% of the population were excluded as contributors, but that appellant and K.B. could not be excluded as contributors.

At trial, K.B.'s school counselor testified that K.B. returned to school a few days after disclosing the sexual abuse, but she experienced anxiety, paranoid thoughts that appellant was "after [her], because of everything [that] was going on," and blackouts when she thought appellant was coming to "get [her]" from school. K.B. eventually ran away from school because she thought she saw appellant pull up in a car at the school. When police located K.B., she appeared "catatonic." K.B. was transported to a children's hospital on a health and welfare hold. After she was released from the hospital, she moved out of state to live with her mother.

Dr. William Hosfield, a psychiatrist who performed a structured diagnostic interview with K.B., testified that she had "lost touch with her reality," exhibited panic symptoms associated with thoughts of appellant, and heard voices commanding her to kill herself. Dr. Hosfield described her condition as a "dissociative phenomenon," in which "a person loses orientation to person place and time and acts without knowledge for matters of minutes or seconds or days." According to Dr. Hosfield, this condition is usually associated with trauma. His initial diagnoses included post-traumatic stress disorder, major depressive disorder, generalized, anxiety disorder, as well as marijuana and alcohol abuse. K.B. also described a history of "oppositional defiant behaviors," dating to a time before she left her mother to live with appellant in Minnesota.

Appellant's trial attorney questioned K.B.'s credibility and inquired whether her psychological problems were caused by appellant's alleged sexual abuse. Appellant and K.B.'s mother lived together until K.B. was ten years of age. After

3

their separation, K.B. lived with her mother in another state. Prior to moving to Minnesota, K.B. complained to appellant that she was not getting along with her mother, that she needed money for clothing and food, and that she was having problems at school and wanted a new start. In the fall of 2008, upon K.B.'s request, K.B.'s mother sent her to live with appellant in Minnesota. This arrangement initially went well; K.B. was an average student, had only minimal issues at school, and felt comfortable enough with appellant that she publicly revealed to him for the first time that she was a lesbian.

However, appellant's girlfriend testified that soon after K.B. moved to Minnesota, K.B. exhibited an attitude in response to punishment, had problems with truancy, and was upset when instructed to follow their rules. Appellant's girlfriend indicated that she was always present in the small apartment, that she had sex with appellant throughout her pregnancy, and that K.B. wanted to be independent from supervision. Appellant's trial attorney noted that K.B.'s notebooks, which contained poetry and song lyrics, did not mention any abuse. Rather, the notebooks mentioned how appellant's girlfriend made her feel isolated from the family and how she was upset about having to follow rules. K.B. claimed that she had other notebooks about the sexual abuse which were missing.

On cross-examination of appellant's girlfriend, the state asked whether appellant paid child support and lied to her about his age and marital status. She testified that she did not believe that appellant paid child support, but that he sent money if needed. She denied that appellant lied about his age. She claimed that appellant told her he was divorced a couple of years before they met in 2004, but also claimed that she telephoned K.B.'s mother and found out that he had only been divorced one year before they met. To rebut this testimony, the state called K.B.'s mother. She testified that appellant's girlfriend telephoned her in 2006 and advised her that appellant had told her that he was 26 years old, when he was really 36 years old, and that he was not married. K.B.'s mother testified that these representations to his girlfriend were not true and that she and appellant were still married.

The jury found appellant guilty of two counts of criminal

4

> sexual conduct and the district court imposed concurrent prison sentences of 144 months for count one and 180 months for count two.

*State v. Green*, Case No. A11-1532, 2012 WL 4475690, at *1-3 (Minn. Ct. App., Oct. 1, 2012), *review granted limited to sentencing issue and case remanded to state district court for resentencing* (Minn. Dec. 18, 2012).

Green appealed his convictions and sentence, alleging (1) ineffective assistance of counsel, (2) errors in the admission and exclusion of various pieces of evidence, and (3) error in sentencing. (App., ECF No. 10, at 6.) Green filed a supplemental *pro se* brief on appeal, further alleging a number of other arguments, including ineffective assistance of counsel, prosecutorial misconduct, and multiple erroneous evidentiary rulings. (App. at 98-167.)

On October 1, 2012, the Minnesota Court of Appeals affirmed Green's convictions, vacated the 144-month concurrent sentence on count one, and left intact the 180-month sentence on count two. *Green*, 2012 WL 4475690. The Court of Appeals concluded that: (1) the trial court did not err in denying Green's motion to admit evidence of an alleged gang rape; (2) although the trial court erred by allowing the state to cross-examine Green's girlfriend on collateral issues, this error did not affect Green's substantial rights; (3) the trial court did not abuse its discretion in allowing evidence of Green physically assaulting K.B.; and (4) Green's sentence on count one needed to be vacated because both counts one and two involved the same acts during the same period of time. *Id.* With respect to the arguments Green raised in his *pro se* supplemental brief, the Court of Appeals ruled as follows:

[Green] has raised a number of other arguments in his pro se supplemental brief. With regard to most of these issues, [his] pro se arguments are either meritless or without adequate legal authority. *See State v. Currie*, 400 N.W. 2d 361, 367 (Minn. App. 1987), *review denied* (Minn. Apr. 17, 1987).

However, there is merit to [Green's] pro se argument that the prosecutor erred in her closing argument to the jury when she claimed as follows:

> There was no semen found in her underwear. Now, there was no DNA able to be extracted from that because there was only the one sperm head. But when you go back into that deliberation room and you think about that, remember [K.B.] is a lesbian. She didn't talk about having sex with any boyfriend who would have left any other semen in her underwear.

When reviewing claims of misconduct based on a prosecutor's closing argument, this Court considers the argument as a whole to determine whether the error prejudiced appellant's substantial rights. *State v. Walsh*, 495 N.W.2d 602, 607 (Minn. 1993). It is improper for counsel to misstate evidence or mislead the jury as to the inferences that may be drawn, *State v. White*, 295 Minn. 217, 223, 203 N.W.2d 852, 857 (1973), or to invite the jury to speculate about evidence that was not presented during the trial, *State v. Zecher*, 267 Minn. 497, 499, 128 N.W.2d 83, 84 (1964).

Here, consistent with Minn. R. Evid. 412(1)(B) and Minn. Stat. § 609.347, neither [Green] nor the state were allowed to submit evidence regarding K.B.'s other sexual acts. Thus, to the extent that the state argued that the absence of such evidence supported its theory that K.B. was not having sex with other men, it impermissibly invited the jury to speculate as to whether K.B., because of her sexual orientation, was sexually active with members of the opposite sex.

When not objected to at trial, prosecutorial misconduct is analyzed under a modified plain-error standard. *Ramey*, 721 N.W.2d at 299. If [Green] establishes that plain error exists, the burden shifts to the state to establish a lack of prejudice and that the misconduct did not affect the outcome of the case. *Id.* at 302. The state did not respond to [Green's] pro se brief. However, while the prosecutor's statements

> were misleading and constituted plain error, there is no reasonable likelihood that these statements had a significant effect on the jury's verdict. The statements were made in relation to a DNA sample that was too small to match the evidence with a particular individual. It is not reasonably likely that these isolated remarks, when viewed within the context of the entire trial, including K.B.'s credibility and another positive DNA sample, had a significant effect on the jury's verdict.

*Green*, 2012 WL 4475690 at *10.

Green petitioned the Minnesota Supreme Court to review the decision of the Court of Appeals. He raised two issues: (1) the sentence left intact by the Court of appeals was based on an inaccurate criminal history score, and (2) the Court of Appeals based its evidentiary rulings on an incorrect interpretation of the Minnesota Rules of Evidence. (App. at 177.)

The Minnesota Supreme Court granted review on the sentencing issue, reversed Court of Appeals decision to the extent that it directed entry of a 180-month sentence on count two, and remanded to the trial court for resentencing. Order of Minnesota Supreme Court signed by the Honorable Lorie S. Gildea, Chief Justice, Minnesota Supreme Court, and filed in Minnesota Appellate Case No. A11-1532 on Dec. 18, 2012 (App. at 295). The Minnesota Supreme Court denied review as to all other issues. *Id.*

### B. Post-Conviction Proceedings

On September 4, 2013, Green filed a pro se petition for post-conviction relief, alleging (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, and (3) errors in evidentiary rulings on the part of the trial court. (App. at 296-352.)

The state district court denied Green's petition. The district court determined Green's claim of ineffective assistance of trial counsel was barred by operation of the *Knaffla* rule*, see*

7

*State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976) (holding that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief"), and his claim of ineffective assistance of appellate counsel had no merit. (App. at 353-64.)

On February 12, 2014, Green appealed *pro se* from the district court's order denying post-conviction relief. (App. at 364-440.) In this appeal, Green made three arguments: (1) "when viewed in a light most favorable to the verdict poorly corroborated testimony leaves grave doubts as to appellant's guilt and in the interests of justice court should reverse" (App. at 374); (2) Green did not have a meaningful opportunity to raise adequately his claim of ineffective assistance of trial counsel (App. at 402); and (3) the trial court's admission of "faulty" DNA expert testimony combined with prosecutorial misconduct resulted in substantial unfairness that justifies granting a new trial. (App. at 406-07.)

On July 11, 2014, the Court of Appeals issued an Order Opinion denying Green's request for post-conviction relief. (App. at 442-44.) The Court of Appeals determined that (1) the state district court did not abuse its discretion in holding that Green knew the factual basis of the arguments he raised in his post-conviction petition, (2) Green failed to make an adequate showing of ineffective assistance of counsel such that he was entitled to an evidentiary hearing on the matter, and (3) Green's references to prosecutorial misconduct would not be considered because any such claim was not raised to the district court. (App. at 443-44.) The Court of Appeals denied Green's *pro se* motion for reconsideration, and the Minnesota Supreme Court denied review. (App. at 460-61, 463.)

On January 16, 2015 Green filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus and a memorandum in support of the same. (ECF Nos. 1 & 2.) In his petition, Green

asserts the following grounds for relief:

> Ground one: 1. When viewed in a light most favorable to the verdict poorly corroborated testimony leaves grave doubts as to appellant's guilt and in the interests of justice court should reverse
>
> Ground two: 2. Lower court abused its discretion in relying upon derosier to excuse erroneous admission of misleading expert testimony without conducting a plain-error analysis
>
> Ground three: 3. Legal merit of appellant's ineffective assistance of appellate counsel claim

(Pet'n, ECF No. 1, at 5 (errors in original).)[1] Green concluded, "Combined with prosecutorial misconduct resulted in 'substantial unfairness' to petitioner and a new trial should be awarded." (*Id.*) Respondent moved to dismiss Green's petition on March 4, 2015, arguing that he failed to exhaust his state court remedies and his claims have been procedurally defaulted. (ECF Nos. 8 & 9.)

## II. ANALYSIS

### A. Standard of Review

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [ ] the traditional function of the writ is to secure release from illegal custody." *Preise v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated in state court, an application for a writ of habeas corpus can only be granted where the state

---

[1] Green also asserts as a separate ground for relief, "Ground four: 4. Improper admission of expert testimony." Pet'n at 5. The Court interprets this challenge to be substantially similar to the evidentiary challenge leveled in Ground two. Accordingly, the Court will address them as one argument. *See* Section II.C.2, *infra*.

court's decision on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Linehan v. Milchark*, 315 F.3d 920, 924 (8th Cir. 2003) (applying § 2254 to petition by civilly committed sexually dangerous person).

A state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it unreasonably applies the correct legal principle to the facts of the prisoner's case. *Id.* at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Lyons v. Leubbers*, 403 F.3d 585, 592 (8th Cir. 2005) (quoting *Williams*, 529 U.S. at 411).

A federal court will not entertain a petition for writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the

remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." To satisfy this exhaustion requirement, the petitioner must fairly present the federal nature of his claim to each level of the state courts. *O'Sullivan*, 526 U.S. at 845. A federal claim is fairly presented when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997).

When a petitioner has failed to present federal constitutional claims fairly in state court, the federal court must determine whether the state procedural rules would allow a hearing on the unexhausted claim in a state court proceeding. *McCall*, 114 F.3d at 757. If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief for that claim unless cause and prejudice, or fundamental miscarriage of justice, can be demonstrated. *Id.* at 758. A claim that is procedurally defaulted under state law is barred from federal habeas review only if the state procedural rule is "firmly established" and "regularly followed." *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995).

Under Minnesota law, it is firmly established that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). Two exceptions to the *Knaffla* rule exist: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal; or (2) if the defendant did not deliberately or inexcusably fail to raise the issue in

11

the first appeal and fairness requires review. *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006).

### B. First Argument – Poorly Corroborated Testimony

Green's first ground for relief asserts that, "[w]hen viewed in a light most favorable to the verdict poorly corroborated testimony leaves grave doubts as to [his] guilt and in the interests of justice court should reverse." Pet'n at 5. The Court understands this challenge to be asserting that there was insufficient evidence for a reasonable jury to find that Green was guilty of the charged crimes.

Green failed to present his insufficiency-of-the-evidence argument to the state district court in his first post-conviction proceeding. None of the claims in Green's memorandum for post-conviction relief asserts that there was insufficient evidence to support his conviction. Green did raise this argument to the Minnesota Court of Appeals, but claims not raised to the state district court may not be raised on appeal. *E.g.*, *Hirt v. State*, 244 N.W.2d 162 (Minn. 1976). Green failed to exhaust this claim by failing to "fairly present" it to the state district court in his post-conviction petition. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Accordingly, this claim is barred by the *Knaffla* rule.

### C. Second Argument – Prosecution's Statements in Closing Argument and Erroneous Admission of Evidence

Green's second ground for relief asserts that the trial court abused its discretion by "relying upon [*DeRosier*] to excuse erroneous admission of misleading expert testimony without conducting a plain-error analysis." Pet'n at 5. This argument raises two issues: the prosecutor's closing statement and the trial court's evidentiary rulings.

### 1. Prosecutor's Statements Did Not Prejudice Green's Substantial Rights

Although it is not explicitly mentioned in Green's second argument, the Court will first address Green's challenge to the prosecutor's remarks during closing statements. Though it is not clear, Green's memorandum can be read to base his challenge on *State v. DeRosier*, 695 N.W.2d 97 (Minn. 2005), which addresses potential prosecutorial misconduct during closing arguments. *See id* at 106-08. *DeRosier*, however, has no bearing on the trial court's admission of potentially misleading expert testimony. Indeed, to the extent Green invokes *DeRosier* to challenge the prosecutor's statements at closing arguments, the Court understands this challenge to be asserting that the trial prosecutor committed reversible misconduct when she claimed as follows:

> There was no semen found in her underwear. Now, there was no DNA able to be extracted from that because there was only the one sperm head. But when you go back into that deliberation room and you think about that, remember [K.B.] is a lesbian. She didn't talk about having sex with any boyfriend who would have left any other semen in her underwear.

*See Green*, 2012 WL 4475690 at 10.

After careful review, the Court determines that Green did not fairly present this argument to the Minnesota Supreme Court when he petitioned for review of his post-conviction proceedings. In his petition to the Minnesota Supreme Court, Green mentioned the prosecutor's closing argument exactly once, and then only in passing. *See* App. at 461. When referring to the prosecutor's closing argument in his petition to the Minnesota Supreme Court, Green also referred to *State v. Bailey*, 677 N.W.2d 380 (Minn. 2004), a case that addresses whether the admission of DNA evidence was a violation of

13

the defendant's due process rights. This sideways reference did not invoke a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue" concerning the prosecutor's closing arguments. *See McCall*, 114 F.3d at 757. Accordingly, this claim was not fairly presented to the Minnesota Supreme Court, and therefore must be dismissed.

Moreover, even if Green had fairly presented this claim, under *DeRosier*, prosecutorial misconduct during closing statements is not *per se* reversible error. 695 N.W.2d at 107. The Minnesota Court of Appeals determined that, although "the prosecutor's statements were misleading and constituted plain error, there is no reasonable likelihood that these statements had a significant effect on the jury's verdict" in Green's case. 2012 WL 4475690 at *10. This Court agrees with the Minnesota Court of Appeals that the prosecutor's statements did not have a significant effect on the jury's verdict, and therefore the error did not prejudice Green's substantial rights. And, as stated above, because this claim was not fairly presented to the Minnesota Supreme Court, it must be dismissed.

### 2. Admission of DNA and Expert Testimony

Separate from the citation to *DeRosier*, Greene's second argument asserts that the trial court erroneously admitted DNA and expert testimony that was misleading. Respondent argues that Green did not fairly present this argument to the Minnesota Supreme Court in his post-conviction petition. This is inaccurate. Green's main argument to the Minnesota Supreme Court concerned the propriety of the trial court's admission

14

and the prosecution's use of DNA evidence and supporting testimony at trial. (App. at 453-60.) As Respondent indicates, the petition did not refer to or rely on *DeRosier*. *Id.* The substance of the argument presented to the Minnesota Supreme Court, however, is sufficiently similar to the argument presented in Green's petition and his *pro se* supplement to the Court of Appeals such that it fairly presents the argument.

Even though Green's argument was fairly presented to the Minnesota Supreme Court, however, this Court determines that it is barred by *Knaffla*. In his supporting memorandum, Green advances three points in support of his argument: (1) DNA found on the comforter should have been excluded because it was confusing to the jury; (2) DNA evidence from carpet samples was confusing to the jury; and (3) DNA evidence taken from K.B.'s underwear did not meet the standards of the relevant scientific community. (Mem. in Supp., ECF No. 2, at 7-9.) Green did not object to the admission of these pieces of evidence at trial.

As stated above, *Knaffla* bars from consideration upon a petition for post-conviction relief all matters raised on direct appeal and all claims known but not raised. Green's claims concerning the admissibility of DNA evidence at trial should have been objected to at the time. Green should have objected to the erroneous admission of DNA evidence at trial; because he did not, the issue is forfeit. *See State v. Jones*, 678 N.W.2d 1, 22 (Minn. 2004). Green's claims are not novel, and fairness does not require this Court to review them. *Townsend*, 723 N.W.2d at 18. Accordingly, this claim is barred by the *Knaffla* rule.

### D. Third Argument – Ineffective Assistance of Counsel

Green's third ground for relief asserts that he was deprived of effective assistance of appellate counsel. Green failed to present his ineffective-appellate-counsel argument to the Minnesota Court of Appeals or to the Minnesota Supreme Court in his post-conviction petition. (App. at 453-63.) None of the claims in Green's memorandum for post-conviction relief asserts that his appellate counsel provided ineffective assistance. As such, Green failed to exhaust this claim by failing to "fairly present" it to the state district court in his post-conviction petition. *Reese*, 541 U.S. at 29. Accordingly, this claim is barred by the *Knaffla* rule.

### III.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Green's Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**, Green's Motion for Services (ECF No. 13) be **DENIED AS MOOT**, Respondent's Motion to Dismiss (ECF No. 8) be **GRANTED**, and this action be **DISMISSED WITH PREJUDICE.**

Date:  September 4, 2015

s/ Tony N. Leung
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Green v. Roy*
File No. 15-cv-107 (SRN/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation

by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court by **October 5, 2015**.